# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FELIX A. MARTINEZ, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:20-CV-00174(JCH) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF STAMFORD, | : | MARCH 17, 2022 |
| Defendant. | : | |

## RULING ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 31)

### I.     INTRODUCTION

Plaintiff, Felix A. Martinez ("Martinez"), a police officer for the City of Stamford, brings this action against defendant, the City of Stamford ("Stamford"), alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), section 1983 of title 42 of the United States Code (section 1983),[1] and the Connecticut Fair Employment Practices Act, section 46a-60(b)(1) of the Connecticut General Statutes ("CFEPA").  Martinez, who is Hispanic, challenges Stamford's decision to promote two non-Hispanic, white police officers to Sergeant rather than Martinez.

Now before the court is Stamford's Motion for Summary Judgment (Doc. No. 31), which Martinez opposes.  See Martinez Opp'n to Stamford Mot. for Summary J. (Doc. No. 34) ("Martinez Opp'n").  For the reasons explained below, Stamford's Motion is granted.

---

[1] Count Two of Martinez's Amended Complaint is labeled "Unlawful Discrimination in Violation of Title 42 U.S.C. § 1981", but the court has construed this Count as stating a sufficiently pled cause of action under section 1983 of title 42 of the United States Code.  See Am. Compl. (Doc. No. 14); Nov. 04, 2020 Order (Doc. No. 25) (denying Stamford's Motion to Dismiss and holding that Count Two states a cause of action under section 1983).

## II.    BACKGROUND

### A.    Factual Background

Martinez has worked as an officer of the Stamford Police Department (the "Department") since 1995.  See Martinez Local Rule 56(a)2 Statement of Facts at ¶ A.1 ("Martinez SOF"); Stamford Local Rule 56(a)1 Statement of Facts at ¶ 1 ("Stamford SOF").  He has had a long and successful career at the Department, serving on the Patrol division, in Community Policing, and on the Narcotics and Organized Crime Unit.  See Martinez Additional Material Facts at ¶ 3 ("Martinez AMF").  He served nearly eight years on the DEA/HIDTA task force, investigating narcotic traffickers and coordinating with federal and state agencies.  Id. at ¶ 7.  Martinez has also worked within the Department as an investigator and a school resource officer and, at times, he has served as an acting Sergeant.  Id. at ¶¶ 7-8.  Over the course of his career, he has been nominated three times for Police Officer of the Year, and he has received multiple awards from Stamford and from federal agencies. Martinez SOF at ¶ 40.  In late 2016, Martinez decided to seek a promotion to a permanent Sergeant position.

Promotions within the Stamford Police Department are governed by a collective bargaining agreement between the police union and Stamford (the "CBA").  Martinez SOF at ¶ A.2; Stamford SOF at ¶ 2; CBA (Doc. No. 31-4).  Section 12(C) of the CBA requires promotions be made "in accordance with the provision of the Charter of the City of Stamford . . . and rules and regulations of the Civil Service Commission."  Martinez SOF at ¶ A.3; Stamford SOF at ¶ 3.  The Charter of the City of Stamford (the "Charter") adopts the Civil Service Rules ("CSR"), which require that promotions be "based on competitive examinations and record of efficiency, character, seniority, and service ratings." Martinez SOF at ¶ A.4; Stamford SOF at ¶ 4; Charter § C5-20-10(12),

available at https://library.municode.com/ct/stamford/codes/code_of_ordinances? nodeId=CH (last accessed Mar. 4, 2022); CSR (Doc. No. 31-5).  Candidates for promotion in the Department were therefore required to take a promotional exam.  A candidate's score on the promotional exam could place him on a list of eligible candidates for promotion.  Whenever a position opened, the individuals with the three highest scores, as well as those with the fourth and fifth scores, if they were within five points of the highest rating, would be certified as eligible for appointment.  See CSR 6.5. The Police Commission would then vote to promote one of the certified individuals after considering a recommendation by the Chief of Police.  Martinez SOF at ¶¶ A.9-11; Stamford SOF at 9-11.

In December 2016 and January 2017, Martinez took the required promotional exam.  Martinez SOF at ¶ A.16; Stamford SOF at ¶ 16.  On February 27, 2017, Stamford issued a list (the "List") ranking by score 39 officers, including Martinez, who were eligible for promotion.  Martinez SOF at ¶¶ A.17-18; Stamford SOF at ¶¶ 17-18. The List provided Stamford with a pool of potential candidates for promotion for the period from February 27, 2017, through February 26, 2019, when the list expired.  See Martinez SOF at ¶ A.17; Stamford SOF at ¶¶17.  Martinez ranked fourteenth on the List with a score of 83.05.  Martinez SOF at ¶ A.19; Stamford SOF at ¶ 19.

In 2017 and 2018, Stamford promoted eight Sergeants from the List.  Martinez SOF at ¶ A. 20; Stamford SOF at ¶ 20.  In 2019, Stamford sought to promote another two candidates from the remaining officers.  Martinez SOF at ¶ A.23; Stamford SOF at ¶ 23.  By then, the six highest scoring officers on the list, in descending order, were (1) Douglas Robinson (85.12); (2) Michael Franzetti (84.06); (3) James Comstock (84.01);

(4) Peter Malanga (83.66); (5) Donald Holdan (83.55); and (6) Martinez (83.05).  <u>See</u> Eligibility List (Doc. No. 31-9).

The Police Commission held a meeting on February 25, 2019, where Martinez and other candidates appeared for interviews. Martinez SOF at ¶ A.24; Stamford SOF at ¶ 24.  Four Commissioners were present, including Commissioners Timothy Abbazia ("Commissioner Abbazia") and Roberto Figueroa ("Commissioner Figueroa").  Two Assistant Chiefs, Thomas Wuennemann ("Assistant Chief Wuennemann") and James Matheny ("Assistant Chief Matheny"), also attended the meeting. Martinez SOF at ¶ A.28; Stamford SOF at ¶ 28.  After the candidates' interviews, the Commission, including Assistant Chiefs Wuennemann and Matheny, convened in an executive session to review the candidates and determine whom to promote.  Martinez SOF at ¶¶ A.27, A.28; Stamford SOF at ¶ 27, 28.  The terms of the Charter then required the Commission to receive the recommendations of then-Chief of Police Jonathan Fontneau ("Chief Fontneau") before voting.  Martinez SOF at ¶ A.56, A.32; Stamford SOF at ¶ 56, 32; Charter § C6-80-1(1).

At the time of the meeting, Chief Fontneau had decided that he would retire from his position soon thereafter due to health problems; thus, he turned to Assistant Chiefs Wuennemann and Matheny, who would run the Department in his absence, to determine which candidates should be recommended to the Commission.  Martinez SOF at ¶¶ A.32-33; Stamford SOF at ¶¶ 32-33.  Wuennemann described the decision-making process in his April 22, 2021 deposition, explaining that, although "everybody on the list was . . . qualified", he "felt very strongly by looking at the resumes and the interview that Jim Comstock was the most qualified person on the list."  <u>See</u> Martinez

SOF at ¶ A.48; Stamford SOF at ¶ 48.  Meanwhile, "Matheny felt that Pete Malanga was the most qualified on the list."  Id.  Ultimately, Chief Fontneau "split the baby" and recommended to the Commission the two officers who the Assistant Chiefs favored: Jim Comstock ("Comstock") and Pete Malanga ("Malanga").  Martinez SOF at ¶ A.34, A.48; Stamford SOF at ¶ 34, 48.  Both Comstock and Malanga were white men.

Both officers had also led lengthy, decorated careers at the Department. Comstock joined the Department as an officer in 1998 after serving two years in another municipality.  Martinez SOF at ¶ A.35; Stamford SOF at ¶ 35.  Over the course of his employment, Comstock had served as an Explosive K-9 Handler, a Bomb Squad/Hazardous Materials Technician – Team Leader, and a School Resource Officer, and had spent time in Narcotics & Organized Crime, the Neighborhood Impact Unit, the West District Community Police Task Force, and the Patrol Division.  Martinez SOF at ¶ A.38; Stamford SOF at ¶ 38.  Comstock was recognized with several awards, including Police Officer of the Year.  Martinez SOF at ¶ A.39; Stamford SOF at ¶ 39.  Comstock also held a bachelor's degree in criminal justice from Marist College and has attended various police schools.  Martinez SOF at ¶ A.36, A.41; Stamford SOF at ¶ 36, 41.  He received a score of 84.01 on the Department's promotion test.  Martinez SOF at ¶ 23; Stamford SOF at ¶ 23.

Malanga joined the Department in 2003, and had since worked as a criminal investigator in the Major Crimes, Special Investigations, and Organized Crime Divisions. Martinez SOF at ¶ A.42, A.44; Stamford SOF at ¶ 42, 44.  He had also served as a Patrol Officer, a School Resource Officer, and a Team Operator and Instructor for the Special Response Team, in addition to serving as a Field Training Officer. Martinez

SOF at ¶ A.44-45; Stamford SOF at ¶ 44-45.  Malanga was nominated four times for Police Officer of the Year and received other awards.  Martinez SOF at ¶ A.47; Stamford SOF at ¶ 47.  He holds a bachelor's degree in criminal justice from Sacred Heart University.  Martinez SOF at ¶ A.43; Stamford SOF at ¶ 43.  On the Department's promotion test, he received a score of 83.66.  Martinez SOF at ¶ 23; Stamford SOF at ¶ 23.

Upon receiving Chief Fontneau's recommendations, the Commission voted unanimously to promote Comstock and Malanga.  Martinez SOF at ¶ A.49; Stamford SOF at ¶ 49.  One Commissioner, Commissioner Figueroa, did propose that Martinez be promoted instead, but ultimately, Commissioner Figueroa voted in favor of promoting Comstock and Malanga, not Martinez.  Martinez SOF at ¶ A.49.

B.    Procedural Background

Martinez filed charges of employment discrimination on or around June 4, 2019, with both the State of Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the United States Equal Employment Opportunity Commission ("EEOC").  See Am. Compl. at ¶ 5(a).  The EEOC issued a Dismissal and Notice of Rights on December 12, 2019, and the CCHRO issued a Release of Jurisdiction on December 11, 2019. See id. at ¶¶ 5(b) & 5(c).  Martinez then filed the instant action on February 7, 2020.  See Compl. (Doc. No. 1).  The court denied Stamford's Motion to Dismiss Count Two on November 4, 2020, and now considers Stamford's Motion for Summary Judgment as to all three Counts. See Order Denying Mot. for Summary J. (Doc. No. 25); Stamford Mot. for Summary J.

## III.    LEGAL STANDARD

A motion for summary judgment may be granted only where the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).  Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought."  LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV.    DISCUSSION

### A.    Count One: Title VII

Stamford first moves for summary judgment as to Count One of Martinez's Amended Complaint, sounding in racial discrimination and failure to promote under Title VII.  See Stamford Mot. for Summary J. at 1.  Title VII prohibits employers from discriminating against any individual because of that individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Thus, "[a]n employment decision . . .

violates Title VII when it is based in whole or in part on discrimination." Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008) (internal quotation marks omitted) (emphasis in original). The Supreme Court has adopted a three-step burden shifting framework allowing a plaintiff to prove employment discrimination under Title VII on the basis of circumstantial evidence. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the burden falls on the plaintiff to establish a prima facie case of discrimination. To establish prima facie discrimination in promotion decisions, a plaintiff must show:

> (1) she is a member of a protected class, (2) she was qualified for the job for which she applied, (3) she was denied the job, and (4) the denial occurred under circumstances giving rise to an inference of discrimination on a basis forbidden by Title VII.

Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000). If the plaintiff establishes a prima facie case, the burden shifts to his employer, who must show a "legitimate, nondiscriminatory reason" for the challenged promotion. See McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009). Finally, once an employer puts forth a nondiscriminatory reason, the burden shifts back to the plaintiff to show that the offered reason is a mere "pretext" for unlawful discrimination. See id.

For the purposes of the instant Motion, Stamford concedes that Martinez has established a prima facie case of discrimination. See Stamford Mem. in Support of Mot. for Summary J. at 17. Stamford argues, however, that legitimate, nondiscriminatory reasons existed for its decision to promote Comstock and Malanga rather than Martinez. Id. Martinez objects that Stamford's reasons are a pretext for Stamford's discriminatory, race-based promotion decision. See Martinez Opp'n at 17-32.

1.     Whether Stamford had Legitimate Nondiscriminatory Reasons for
       its Promotion Decision

Stamford having conceded that Martinez has set forth a prima facie case of

discrimination, the court adopts "a temporary 'presumption' of discriminatory

motivation[.]"  Littlejohn v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015).  To rebut

this presumption, the employer must "come[ ] forward with admissible evidence of a

legitimate nondiscriminatory reason for its adverse employment decision."  Howley, 217

F.3d at 150. The employer's burden, however, is "not a demanding one[.]"  Bickerstaff v.

Vassar Coll., 196 F.3d 435, 446 (2d Cir. 1999).  The employer "need not prove the

absence of discriminatory motive or that the [adverse employment decision] was

motivated by a legitimate reason."  Meiri v. Dacon, 759 F.2d 989, 996 n.11 (2d Cir.

1985) (emphasis in the original).  Instead, the employer need only articulate "legitimate

nondiscriminatory reasons [that are] clear and specific."  Bucalo v. Shelter Island Union

Free Sch. Dist., 691 F.3d 119, 132 (2d Cir. 2012) (internal quotation marks omitted).

Here, Stamford has offered legitimate, nondiscriminatory reasons for its decision

to promote Comstock and Malanga rather than Martinez.  Members of the Commission

evaluated candidates based on the candidates' promotion exam scores along with "their

work history, which is . . . mostly shared by the chief . . .  through . . . his

recommendation as well as . . . the interview we conduct as well as the documents . . .

we're provided to review." See Comm'r Abbazia Depo. at 23; 36 (Doc. No. 31-7).  Under

the Charter, Chief Fontneau was required to recommend candidates to the

Commission, and he recommended Comstock and Malanga.  See Charter at § C6-80-

1(1).  One Commissioner testified at his deposition that Chief Fontneau's

recommendation informed the Commissioners' unanimous votes in favor of Comstock

and Malanga.  See Comm'r Abbazia Depo. at 23 ("the recommendation from the chief carried a lot of weight").  The Commission's reliance on the Chief's recommendation constitutes a legitimate, nondiscriminatory reason to promote Comstock and Malanga rather than Martinez. See, e.g., Blanco v. Brogan, 620 F. Supp. 2d 546, 557 (S.D.N.Y. 2009) (finding that a police chief articulated nondiscriminatory reasons for promoting two individuals when he relied on the recommendations of his command staff).

Furthermore, Chief Fontneau offered a legitimate and non-discriminatory reason for recommending Comstock and Malanga; he endorsed the two officers on the advice of his Assistant Chiefs, Wuennemann and Matheny.  Wuennemann "felt very strongly by looking at the resumes and the interview that [Comstock] was the most qualified person on the list"  See Martinez SOF at ¶ A.48; Stamford SOF at ¶ 48.  Wuennemann elaborated in an affidavit that he believed Comstock was most qualified for the position on the basis of his "considerable experience and skill at teaching and instruction", which were "particularly important . . . because serving as a first line supervisor involves a lot of teaching."  See Wuennemann Aff. at ¶ 4 (Doc. No. 31-16).  Wuennemann also believed that Comstock "gave the best interview among the candidates" for the position, and that his exam score "was a consideration in his favor."  Id.  As for Matheny, he "believed that Peter Malanga was the most qualified candidate . . . ." See Matheny Aff. at ¶ 4 (Doc. No. 31-15). Matheny based this opinion on his "knowledge of [Malanga's] leadership skills through years of observation", which led him to believe that Malanga "was clearly the top candidate and would be in the best position to lead immediately. Indeed, he had already been serving as de facto supervisor." Id.

10

Thus, Stamford has met its burden, which is "not . . . demanding", see Bickerstaff, 196 F.3d at 446, to articulate "legitimate nondiscriminatory reasons [that are] clear and specific."  See Bucalo, 691 F.3d at 132 (internal quotation marks omitted).

      2.     Whether Stamford's Offered Reasons are Pretextual

Because Stamford has produced evidence of legitimate, nondiscriminatory reasons for its promotion decision, "the burden shifts back to [Martinez] to prove, by a preponderance of the evidence, that the real reason for the adverse employment decision was discrimination."  Mandell v. Cnty. of Suffolk, 316 F.3d 368, 380–81 (2d Cir. 2003).  To survive summary judgment, the plaintiff must offer admissible evidence showing "circumstances that would be sufficient to permit a rational finder of fact to infer that the employer's employment decision was more likely than not based in whole or in part on discrimination."  Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014) (internal quotation marks and alterations omitted).  In doing so, "the plaintiff is entitled to rely on the evidence constituting the prima facie case, together with supportable inferences to be drawn from the false or erroneous character of the employer's proffered reason for the adverse action."  Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998) (internal quotation marks omitted).  Although "[s]ummary judgment is ordinarily inappropriate in a Title VII action where a plaintiff has established a prima facie case", the non-moving party has "the burden of coming forward with specific facts showing the existence of a genuine issue for trial."  Smith v. Am. Exp. Co., 853 F.2d 151, 154 (2d Cir. 1988) (citing Fed.R.Civ.P. 56(c).  Thus, the plaintiff is not entitled to judgment unless she shows that the challenged employment decision was more likely

than not motivated, in whole or in part, by unlawful discrimination." Howley, 217 F.3d at 150.

Martinez argues that (a) Stamford's reliance on the qualifications of Comstock and Malanga is pretextual, as Martinez was a more qualified candidate; (b) circumstantial evidence of disparate promotion of Hispanic officers provides evidence that Stamford's proffered reasons are pretextual; and (c) Stamford's failure to adhere to Connecticut State law provisions regarding promotion of minority police officers evidences a pretext. See Martinez Opp'n at 17-32.

a.   Credentials

First, Martinez argues that Stamford has not provided evidence that it selected Malanga and Comstock because they were more qualified than Martinez. The Second Circuit has explained, however, that "federal antidiscrimination law does not require that the candidate whom a court considers most qualified for a particular position be awarded that position; it requires only that the decision among candidates not be discriminatory." Village of Freeport v. Barrella, 814 F.3d 594, 614 (2d Cir. 2016) (internal quotation marks omitted). In order for a plaintiff "to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, . . . the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) (internal quotation marks omitted). Thus, "[w]hen a decision to hire, promote, or grant tenure to one person rather than another is reasonably attributable to an honest even

12

though partially subjective evaluation of their qualifications, no inference of discrimination can be drawn." Lieberman v. Grant, 630 F.2d 60, 67 (2d Cir. 1980).

Here, no reasonable juror could find Martinez's qualifications "so superior to the credentials" of Malanga and Comstock as to raise an inference of discriminatory animus. Byrnie, 243 F.3d at 103. Martinez argues that he was "objectively the superior candidate" based primarily on his experience as an investigator in the Bureau of Criminal Investigation and as a member of the DEA task force. See Martinez Opp'n at 18-19. However, both Comstock and Malanga held similar interagency experience. Sergeant Comstock served on the Joint Terrorism Task Force, while Sergeant Malanga had trained local and regional SWAT teams. See Stamford Reply at 5 (Doc. No. 36); Comstock Resume (Doc. No. 31-13); Malanga Resume (Doc. No. 31-14). While Martinez contends that "[n]either Malanga, nor Comstock, had such an outstanding accolade on their record of performance", both officers have worked in multiple roles within the Department and received various awards. See Martinez Opp'n at 19. For instance, Comstock has won Police Officer of the Year, an accolade that Martinez has not received, while Malanga has served as a Field Training Officer, operating in a role that Martinez has not filled. See Comstock Resume; Malanga Resume; Martinez Resume (Doc. No. 35-1). Thus, because Martinez, Malanga, and Comstock "each offered distinct advantages", and because Stamford "was entitled to weigh which [advantages it] most valued", Martinez's credentials do not create an inference of discriminatory animus. Village of Freeport, 814 F.3d at 614.

Furthermore, Comstock and Malanga each received higher scores on the promotion exam than Martinez, and they were ranked above him on the List of officers

eligible for promotion.  See List (Doc. No. 31-9).  Even if it is true, as Martinez argues, that he was "just as qualified as Officer Comstock and Officer Malanga for promotion" notwithstanding his slightly lower score, being "just as qualified" does not meet the demanding requirement to show "credentials . . . so superior to the credentials of [Comstock and Malanga] that no reasonable person, in the exercise of impartial judgment, could have chosen [Comstock and Malanga] over [Martinez] for the job in question."  Byrnie, 243 F.3d at 103.  Thus, Martinez's objectively lower score on the promotion exam, compared with that of Comstock and Malanga, could not lead a reasonable juror to a finding Stamford's promotion decision was based, in whole or in part, on discriminatory animus.

<b>b.</b>    <u>Circumstantial Evidence</u>

Lastly, Martinez offers circumstantial evidence of discrimination, testifying that out of 288 police officers, only one Hispanic officer served in the position of Sergeant as of the time of Mr. Martinez's February 2, 2021 deposition.[2]  Martinez Opp'n at 6-7. Moreover, of the ten individuals promoted off the List of eligible candidates, only one was Hispanic.  Id. at 7.  Martinez's proffered evidence, however, amounts to little more than "raw numbers which, without further information on key considerations such as the racial composition of the qualified labor pool, cannot support an inference of discrimination."  Lomotey v. Connecticut-Dep't of Transp., 355 F. App'x 478, 481 (2d Cir. 2009).  The numbers alone do not account for factors such as differences in qualifications or work experiences that might account for the racial disparities in the

---

[2] Stamford disputes this representation, as it states that it promoted two Hispanic Sergeants in 2019. See Stamford SOF at ¶ 53.

Department's leadership.  As Martinez makes no "attempt to account for [these] other causes," a reasonable juror could not infer discrimination on the basis of this circumstantial evidence.  Hollander v. Am. Cyanamid Co., 172 F.3d 192, 203 (2d Cir. 1999), abrogated on other grounds by Schnabel v. Abramson, 232 F.3d 83 (2d Cir. 2000).

For its part, Stamford argues that circumstantial evidence weighs against a finding of discrimination or pretext.  First, Stamford argues that a Hispanic man, Rafael Barquero, was promoted in 2018 off the same List of eligible officers.  See Stamford SOF at ¶ 21.  Another two Hispanic men were promoted later in 2019.  Id. at ¶ 53. However, "Title VII's principal focus is on protecting individuals, rather than a protected class as a whole"; thus "an employer may not escape liability for discriminating against a given employee on the basis of race simply because it can prove it treated other members of the employee's group favorably." Graham v. Long Island R.R., 230 F.3d 34, 43 (2d Cir. 2000).[3]  Stamford also contends that an inference against discrimination arises because one of the Commissioners who voted in favor of the white officers— Commissioner Figueroa—was Hispanic.  See Stamford Mem. in Support of Mot. for Summary J. at 19.  This line of reasoning, however, relies on "[t]he fallacy of the same-group inference", or an assumption that members of one group will not discriminate against members of the same group. See Bailey v. Nexstar Broad., Inc., No. 3:19-CV-00671(VLB), 2021 WL 848787, at *9 (D. Conn. Mar. 6, 2021).  This fallacy has been

---

[3] The case which Stamford cites in support of this proposition, Johnson v. State of Connecticut Dep't of Corrections, 392 F. Supp.2d 326, 338 (D.Conn. 2005), is inapposite, as this court held that a plaintiff could not state a failure to promote claim where an individual of the same race was promoted to the position the plaintiff sought.  Here, by contrast, two white men were promoted to the position that Martinez sought.

"laid bare" by a body of credible social science research, and the Supreme Court's decision in Oncale v. Sundowner cautions against presuming that members of a definable group will not discriminate against others who identify with the same group. Id. at 7-8 (discussing Oncale v. Sundowner, 523 U.S. 75 (1998) and implicit attitude and bias testing).  Thus, neither the promotion of other Hispanic officers nor the vote of Commissioner Figueroa weighs against a presumption of discrimination.

    c.  Sections 7-291a and b of the Connecticut General Statutes

   Lastly, Martinez argues that Stamford's decision to promote Comstock and Malanga rather than himself "circumvented the affirmative action provisions of state law and the rules and regulations of the Stamford Police Department."  See Martinez Opp'n at 20.  Specifically, he claims that the promotion contravened two sections of the Connecticut General Statutes related to recruiting, retaining, and promoting minority police officers: sections 7-291a and 7-291b of the Connecticut General Statutes. See id.; see also Conn. Gen. Stats. §§ 7-291a & 7-291b.  While neither statute creates a private right of action, Martinez claims that Stamford's "disregard of the provisions . . . is evidence of pretext."  See Martinez Opp'n at 20; see also Gerardi v. Bridgeport, 294 Conn. 461, 468-70 (2010) ("there exists a presumption in Connecticut that private enforcement does not exist unless expressly provided in a statute").

   Section 7-291a requires certain law enforcement units to "make efforts" to hire and promote diverse officers.  The statute provides in relevant part:

> (a) If a law enforcement unit serves a community with a relatively high concentration of minority residents, the unit shall make efforts to recruit, retain and promote minority police officers so that the racial and ethnic diversity of such unit is representative of such community. Such efforts may include, but are not limited to: . . . . (3) implementation of policies providing that when there is a vacant position in such unit, such position shall be filled by hiring or promoting a minority candidate when the qualifications of such

candidate exceed or are equal to that of any other candidate or candidates being considered for such position when such candidates are ranked on a promotion or examination register or list. For purposes of this section, "minority" means an individual whose race is defined as other than white, or whose ethnicity is defined as Hispanic or Latino by the federal Office of Management and Budget for use by the Bureau of Census of the United States Department of Commerce.

Conn. Gen. Stats. § 7-291a(a).  Section 7-291b requires police departments to adopt

guidelines for hiring and promotion of minority officers, stating:

Not later than January 1, 2016, each law enforcement unit[4] . . . shall develop and implement guidelines for the recruitment, retention and promotion of minority police officers . . . . Such guidelines shall promote achieving the goal of racial, gender and ethnic diversity within the law enforcement unit."

Conn. Gen. Stats. § 7-291b.

The Second Circuit has made clear that an employer's adopting "of a

comprehensive affirmative action program" may weigh against a presumption of

discrimination, as such programs are "the antithesis of a pattern and practice of

discrimination . . . ."  Coser v. Moore, 739 F.2d 746, 751 (2d Cir. 1984) (in the context of

sex discrimination).  A defendant's failure to follow its own affirmative action or hiring

plan, however, can constitute evidence of a pretext.  See Petrovits v. New York City

Transit Auth., No. 95 CIV. 9872 (DAB), 2002 WL 338369, at *7–8 (S.D.N.Y. Mar. 4,

2002) (plaintiff's qualifications and employer's alleged failure to follow

internal Equal Employment Opportunity policies precluded summary judgment on

plaintiff's failure to promote claim under Title VII); Christmas v. N. Carolina Dep't of

---

[4] Section 7-294a of the Connecticut General Statutes defines a law enforcement unit as "any agency or department of this state or a subdivision or municipality thereof."

Admin., N.C., No. 5:09-CV-346-FL, 2011 WL 1870236, at *10 (E.D.N.C. May 16, 2011) (collecting cases).

Here, record evidence could lead a reasonable juror to determine that the Department had not adopted a plan for the promotion of minority police officers at the time of Martinez's interview and Comstock and Malanga's promotions.  Section 7-291b required the Department, as of 2016, to "develop and implement guidelines for the recruitment, retention and promotion of minority police officers" to "promote . . . racial, gender, and ethnic diversity" within the Department.  Conn. Gen. Stats. § 7-291b.  Yet neither Commissioner Figueroa nor Commissioner Abbazia was aware of any formal policies implemented by the Police Commission.  See Figueroa Depo. at 23-25; Abbazia Depo. at 31-32 (testifying that the Commission had implemented no policies related to section 7-291a, which requires "efforts to recruit, retain, and promote minority police officers . . . .").  Only Assistant Chief Wuennemann testified that the Department had adopted a policy addressing sections 729-1a, but he reported that the policy was not introduced until April 2019, after Martinez's February 2019 interview.  See Wuennemann Depo. at 20-21; 9.

The Department's apparent failure to adopt a policy for the promotion of minority officers in the face of 7-291b's statutory mandate to do so could be construed as evidence upon which a reasonable juror could determine that Stamford's reasons for not selecting Martinez were pretextual.  See, e.g., Chang v. Univ. of Rhode Island, 606 F. Supp. 1161, 1183–84 (D.R.I. 1985) ("the failure of an employer to adopt or effectively to implement an affirmative action plan may be probative of discriminatory intent" (citing Coser, 739 F.2d at 751; Craik v. Minnesota State University Bd., 731 F.2d 465, 472 (8th

Cir. 1984)) (sex discrimination case); cf. Haughton v. Town of Cromwell, No. 3:19-CV-00359 (MPS), 2021 WL 4248858, at *7 (D. Conn. Sept. 17, 2021) (determining that a police department's non-compliance with section 7-291b did not constitute evidence of a pretext where the plaintiff presented no evidence that the police department failed to develop and implement such guidelines). Here, where Martinez has provided evidence upon which a reasonable juror could find that the Department failed to comply with a legislative mandate to develop promotion guidelines to "promote . . . racial, gender, and ethnic diversity", such evidence could support a reasonable fact finder's determination that Stamford's proffered reasons for its promotion decision were pretextual.[5]

Stamford argues, in its Reply, that the city was not required to adopt subsection 7-291a(a)(3), which mandates the hiring of equally qualified minority candidates over non-minority candidates. See Stamford Reply at 8. The court agrees that the discretionary language of section 7-291a(a) states only that a law enforcement unit "may" adopt a policy incorporating the mandatory language of subsection 7-291a(a)(3), thus the Department was not required to implement this subsection. However, Stamford has pointed to no evidence that, at the time of Martinez's interview, it had adopted any policy whatsoever regarding the promotion of minority police officers as

---

[5] Although Stamford has not raised the issue, the court notes that Martinez did not plead in his Amended Complaint that Stamford violated section 7-291b; the Amended Complaint refers only to section 7-291a. See Am. Compl. However, Martinez raises the Department's violation of section 7-291b as evidence of a pretext, and "all the evidence supporting a finding of pretext need not necessarily be pled in the [c]omplaint." Ingenito v. Riri USA, Inc., No. 11-CV-2569 MKB, 2013 WL 752201, at *2 (E.D.N.Y. Feb. 27, 2013) (citing Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 71 (2d Cir.2006) ("[T]he requirements for establishing a prima facie case under McDonnell Douglas [do not] apply to the pleading standard . . . .")). While Martinez argued in its Opposition that the Department failed to adopt a policy as required by section 729-1b, Stamford offered no counterargument and, indeed, made no mention of the statute in its Reply. See generally Stamford Reply.

required by section 7-291b.  It is evidence of this failure to implement any policy, rather than a failure to comply with the discretionary policy of subsection 7-291a(a)(3), that could lead a reasonable juror to a finding of pretext.

However, "[a] plaintiff does not necessarily avoid summary judgment merely by establishing a prima facie case and presenting some evidence of pretext."  Camblard v. Connecticut Dept. of Children and Families, 09-CV-0985 (JCH), 2011 WL 3163581 *5 (D. Conn. July 26, 2011) (citing Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000)).  Rather, the court must evaluate the entire record to determine whether the evidence may permit the trier of fact to conclude that the employer unlawfully discriminated against the plaintiff.  See id. (citing Schnabel, 232 F.3d at 90).

Here, Martinez has offered no evidence upon which a reasonable juror could find that his race was a motivating factor in Stamford's decision to promote Comstock and Malanga rather than Martinez.  Indeed, at his deposition, Martinez admitted as much, responding "no, sir" when asked whether he had "any other evidence that the decision was based on [his] race other than [his] belief that [he] was more qualified."  See Martinez Depo. at 59.[6]  Neither Martinez nor either of the two Commissioners whose depositions are in the record stated that any references to race were made during the

---

[6] Moreover, while a reasonable juror could find that the Department had not adopted a policy for promoting minority officers as required under Connecticut law, the Department did have a policy for promotions in place: the procedures described in the CBA, the CSR, and the Charter.  See pp. 2-3, supra. It is undisputed that, under those policies, the top five highest scores should be certified for appointment. See CSR 6.5; Martinez SOF at ¶ A.10; Stamford SOF at ¶ 10.  However, when Martinez was considered for promotion in February 2019, he ranked sixth on the list of remaining eligible candidates.  See Martinez SOF at ¶ A.23; Stamford SOF at ¶ 23.  Thus, undisputed record evidence shows that Stamford breached its own policy in favor of Martinez to permit him to be considered for the promotion, creating an inference against discrimination.  See, e.g., Singleton v. Fed. Bureau of Prisons, No. CV-04-1526 (CPS), 2006 WL 1329712, at *9 (E.D.N.Y. May 16, 2006) (declining to find a pretext where policies were ignored to allow plaintiff to be considered for a position).

selection process.  See Martinez Depo.; Abbazia Depo.; Figueroa Depo.  Indeed, only Assistant Chief Wuennemann indicated that race may have been discussed during the promotion deliberations and, although he didn't recall what was discussed, he stated "the department should be striving for diversity. So obviously that's part of the – was part of the discussion."  Wuennemann Depo. at 25.  He added that he was not aware of any evidence that Martinez's race played a part in his not receiving a promotion. Id. at 26.  Because Martinez has set forth no evidence that Stamford discriminated against him because of his race, no reasonable juror could conclude that his race was a motivating factor in Stamford's promotion decision.

  B.    Count Two: § 1983

  Stamford also seeks summary judgment as to Count Two of Martinez's Amended Complaint, which the court construes as a claim under section 1983 of title 42 of the United States Code.  Once a plaintiff has established that the defendant acts "under color of state law", the plaintiff's "equal protection claim parallels his Title VII claim." Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004).  "The elements of one [claim] are generally the same as the elements of the other and the two must stand or fall together," id. at 159.  Moreover, to the extent that claims under section 1983 and Title VII do differ, none of the distinctions weigh in favor of Martinez.  The Second Circuit has identified four differences between the two causes of action:

> First, and most obviously, a plaintiff advancing a claim pursuant to § 1983 must plausibly allege that "the alleged deprivation was committed by a person acting under color of state law." Title VII has no such requirement. Second, unlike a Title VII claim, which may be brought only against the employing entity, a § 1983 claim "can be brought against an[y] individual" responsible for the discrimination. Third, while an employer may be liable under Title VII for any discriminatory conduct that can properly be attributed to the employer through agency principles, § 1983 does not permit such vicarious liability. "If [an individual] defendant has not personally  violated a

plaintiff's constitutional rights, the plaintiff cannot succeed on a
§ 1983 action against the defendant."

Naumovski v. Norris, 934 F.3d 200, 212 (2d Cir. 2019) (internal citations omitted).

Fourth and finally, section 1983 incorporates a heightened causation standard that does

not apply to Title VII claims, requiring a showing that "discriminatory intent was a 'but-

for' cause of the adverse employment action."   Id. at 214.

The parties do not raise or dispute the first three differences.  However, Stamford

does assert, and the court agrees, that if Martinez cannot show, under the more lenient

causation standard of Title VII, that discriminatory intent was a substantial or motivating

factor in Stamford's promotion decision, then he cannot make such a showing under the

heightened "but-for" cause standard of section 1983.[7]  Thus, because no reasonable

juror could find in favor of Martinez under Title VII, no reasonable juror could find in his

favor under section 1983.

Accordingly, for the same reasons applicable to Martinez's Title VII claim, the

court grants Stamford's Motion for Summary Judgment as to Count Two of his

Amended Complaint.

C.    Count Three: CFEPA

Both parties agree that courts follow the same analysis to evaluate claims under

CFEPA and Title VII.  See Stamford Mem. in Support of Mot. for Summary J. at 15-16;

---

[7] Although the court construes Count Two as stating a section 1983 claim rather than a claim
under section 1981 of Title 42 of the United States Code, see Nov. 04, 2020 Order (concluding that Count
Two states a cause of action under section 1983), Martinez argues that section 1981 and Title VII cases
employ the same analytical framework, except that section 1981 employs a "but-for" causation standard.
See id.  For the purposes of this Motion, the court construes Martinez's arguments as applying to his
claim under section 1983.  However, as the court discusses above, the distinction makes no difference.
Because Martinez's claim fails under Title VII's less stringent causation standard, it fails under a
heightened "but-for" causation standard, as well.

Martinez Opp'n at 32-33; see also Vasquez v. Claire's Accessories, Inc., 392 F.Supp.2d 342, 349 (D.Conn.2005) ("CFEPA claims are analyzed in the same manner as Title VII employment discrimination claims.").  Thus, having determined that Martinez's failure to promote claim fails under Title VII as a matter of law, the court likewise concludes that Martinez's CFEPA failure to promote claim fails as a matter of law.  See, e.g., Farrar v. Town of Stratford, 537 F. Supp. 2d 332, 349 (D. Conn. 2008) (declining to separately analyze a plaintiff's CFEPA claim when his Title VII failure to promote claim failed as a matter of law).

Accordingly, Stamford's Motion for Summary Judgment is granted as to Count Three of Martinez's Amended Complaint.

## V.  CONCLUSION

For the foregoing reasons, Stamford's Motion for Summary Judgment (Doc. No. 31) is granted.  The clerk is directed to close the case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 17th day of March 2022.


      /s/ Janet C. Hall
Janet C. Hall
United States District Judge